Matter of Tassie (Koyote Capital Group LLC--Commissioner of Labor) (2022 NY Slip Op 02598)

Matter of Tassie (Koyote Capital Group LLC--Commissioner of Labor)

2022 NY Slip Op 02598

Decided on April 21, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 21, 2022

533105
[*1]In the Matter of the Claim of Mark Tassie, Respondent. Koyote Capital Group LLC, Appellant. Commissioner of Labor, Respondent.

Calendar Date:March 25, 2022

Before:Garry, P.J., Lynch, Aarons, Colangelo and Ceresia, JJ.

Proskauer Rose LLP, New York City (Allan S. Bloom of counsel), for appellant.
Cooper Erving & Savage LLP, Albany (Carolyn B. George of counsel), for Mark Tassie, respondent.

Colangelo, J.
Appeals from two decisions of the Unemployment Insurance Appeal Board, filed September 3, 2020, which ruled, among other things, that Koyote Capital Group LLC was liable for additional unemployment insurance contributions based on remuneration paid to claimant and others similarly situated.
Claimant, a licensed proprietary trader, was a member of Koyote Capital Group LLC — a broker/dealer subject to the regulation of, among other entities, the Securities and Exchange Commission. Following a significant trading loss, claimant ceased performing trades on behalf of Koyote and filed a claim for unemployment insurance benefits, which Koyote contested. At the conclusion of the hearing that followed, the Administrative Law Judge found sufficient indicia of an employment relationship and, among other things, ruled that Koyote was liable for additional unemployment insurance contributions based on remuneration paid to claimant and others similarly situated. Upon administrative review, the Unemployment Insurance Appeal Board affirmed, and these appeals ensued.
We affirm. "Whether an employment relationship exists within the meaning of the unemployment insurance law is a question of fact, no one factor is determinative and the determination of the . . . [B]oard, if supported by substantial evidence on the record as a whole, is beyond further judicial review even though there is evidence in the record that would have supported a contrary conclusion" (Matter of Lee [AXA Advisors LLC-Commissioner of Labor], 196 AD3d 975, 975 [2021] [internal quotation marks and citations omitted]; see Matter of Thorndike [Penn Mut. Life Ins. Co.-Commissioner of Labor], 185 AD3d 1255, 1256 [2020], lv dismissed 37 NY3d 1090 [2021]). "Although no single factor is determinative, the relevant inquiry is whether the purported employer exercised control over the results produced or the means used to achieve those results, with control over the latter being the more important factor" (Matter of Giampa [Quad Capital, LLC-Commissioner of Labor], 181 AD3d 1129, 1129 [2020] [internal quotation marks and citations omitted]; see Matter of Lee [AXA Advisors LLC-Commissioner of Labor], 196 AD3d at 976).
Although claimant was afforded considerable latitude in terms of managing and investing the $2 million entrusted to his care, such discretion was not unfettered. Significantly, Koyote's managing member testified that claimant's transactions were monitored electronically and were subject to the supervision of Koyote's risk manager and compliance department. If claimant's transactions were deemed to be too risky or volatile, Koyote could impose risk parameters on claimant's trading, require him "to cut back on positions" until Koyote was more "comfortable" with the status of the account or "turn off his ability to put on new trades." Indeed, Koyote's representative testified that Koyote retained the right to intervene or discuss specific trading strategies with its traders, as well [*2]as take back its capital at any time and for any reason, including poor performance. In this regard, Koyote's representative stated that there were "active conversations with [the] risk [manager] at the end of [claimant's] tenure" with the company — conversations that were occasioned by the fact that claimant was "losing money." Although claimant was permitted to work from home, he was required to inform Koyote's risk manager of his whereabouts — including when he elected to take leave for vacation — and, if claimant's trades were not performing well, the risk manager could require claimant to work from the office. To be sure, certain of the parameters placed upon claimant's trades were the product of industry regulation, including his attendance at biannual compliance meetings, and the record does contain evidence that lends credence to Koyote's assertion that claimant was an independent contractor, including the fact that claimant had no financial investment in Koyote and was not personally liable for the losses that he incurred. That said, the record nonetheless contains substantial evidence to support the Board's finding of an employment relationship — specifically, the indicia of supervision and control exercised by Koyote beyond that required by industry regulations (compare Matter of Lee [AXA Advisors LLC-Commissioner of Labor], 196 AD3d at 976-977).
To the extent that Koyote takes issue with the Board's finding than an employment relationship also applies to other similarly situated individuals, we find Koyote's arguments on this point to be unpersuasive (see Matter of Fiorelli [Stallion Express, LLC-Commissioner of Labor], 201 AD3d 1045, 1047 [2022]; Matter of Quesada [Columbus Mgt. Sys., Inc.-Commissioner of Labor], 198 AD3d 1036, 1037 [2021]). Koyote's remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Garry, P.J., Lynch, Aarons and Ceresia, JJ., concur.
ORDERED that the decisions are affirmed, without costs.